VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      22-AP-254

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2023

| | |
|---|---|
| State of Vermont v. Keith George\* | } APPEALED FROM: |
| | } Superior Court, Bennington Unit, |
| | } Criminal Division |
| | } CASE NO. 21-CR-00681 |
| | Trial Judge: Kerry Ann McDonald-Cady |

In the above-entitled cause, the Clerk will enter:

Defendant pled guilty to sexual assault pursuant to a plea agreement and he appeals from the trial court's imposition of sentence.  He argues that he was denied his right to counsel and right to be present at sentencing.  We reject these arguments and affirm.

Defendant was charged with two counts of sexual assault without consent in violation of 13 V.S.A. § 3252(a)(1).  The victim was the fourteen-year-old daughter of defendant's longtime girlfriend.  Defendant pled guilty to one count of sexual assault pursuant to a plea agreement and the State dismissed the second count.  The State was capped at arguing for a sentence of five years to life, split to serve five years, and defendant could argue for any lawful sentence.  At the sentencing hearing, the parties briefly questioned the author of the presentence investigation (PSI) but presented no other witnesses.  The State argued for the maximum sentence allowed under the agreement, citing, among other things, the victim's age and vulnerability, defendant's abuse of his position of trust and authority, his blaming of the victim, and his need for sex-offender treatment.  Defendant advocated for a sentence of three years to life, all suspended, with five years of probation.  Defendant referenced his low risk to reoffend, the psychosexual evaluation, his acknowledgment of the offense, and his receptiveness to treatment.  As an alternative, defendant asked for a split of eight months to serve if the court considered incarceration necessary, which would allow him to complete the sex-offender-treatment program offered in prison.

At the close of the hearing, the court sentenced defendant to three years to life, split to serve three years, with ten years of probation.  The court found that defendant would benefit from sex-offender treatment although he was at a low risk to reoffend.  It recounted the

circumstances of the crime, noting that defendant had a relationship with the victim for four years leading up to the criminal offense and the victim considered defendant a stepfather. The victim began spending significant amounts of time with defendant and defendant took advantage of the victim's feelings toward him and her vulnerability. When the victim asked defendant if he wanted to try sex, he agreed and engaged in a sexual act with a child who, by law, could not consent. Defendant confirmed that this happened twice, which suggested that his actions were not impulsive. Defendant said that the victim had become obsessed with him, that he loved her like a stepchild, and that it was not a romantic relationship. During the psychosexual evaluation, he suggested that the victim had manipulated him, knowing that he would do anything for her. Defendant also recognized, however, that his conduct was wrong. The court acknowledged defendant's apology and regret for what occurred.

The court found that defendant was amenable to and would do well in treatment. He had no criminal history. He had a steady job, no children, and a stable relationship with another adult who did not have children. These factors favored defendant and mitigated the risk to public safety. At the same time, the court recognized that the sentence must provide specific and general deterrence, punishment, and rehabilitation. It cited the significance of the crime and the need for incarceration. The court erroneously believed that the law imposed a mandatory minimum of three years to serve and wrongly observed that defendant's proposed sentence of eight months to serve was not lawful under the statute. It concluded that sex-offender treatment should commence in an incarcerated setting and noted the absence of treatment available in the community. Based on these considerations, the court imposed the statutory minimum sentence of three years to life, split to serve three years. It rejected the State's recommended sentence given defendant's lack of a prior criminal history, his low risk to reoffend, and the fact that he had accepted responsibility for his conduct.

Later that day, the court issued an entry order clarifying its decision. It acknowledged its error in stating that the law imposed a mandatory to-serve portion of the sentence. The court considered the sentence it had imposed appropriate notwithstanding this error, however, based on the factors it had articulated at the hearing. The court referenced the need to have sex-offender treatment completed in the correctional facility given the absence of treatment in the community and the uncertainty of whether defendant could find available individual sex offender counseling. It also cited defendant's awareness that he was the adult in the relationship with a victim who was only fourteen years old. It reiterated that defendant took advantage of the victim's feelings toward him and her vulnerability more than once. His familial feelings toward the victim did not deter his criminal conduct and he had committed a crime against a vulnerable child. In light of these factors, the court found that the sentence it had imposed protected public safety, the victim, and maximized defendant's rehabilitation, which along with punishment and specific and general deterrence, was the goal of the court's sentence. Defendant now appeals.

Defendant contends that the court should have held a new sentencing hearing and that by failing to do so, he was deprived of his right to be present and his right to counsel. According to defendant, because the court mistakenly believed that it had to impose a sentence of at least three years to serve, his advocacy for an eight-month split sentence at the hearing was not meaningful. He further asserts that his attorney had no ability to challenge the court's sentencing rationale.

We reject the premise of defendant's argument. Defendant was present and represented by counsel at the sentencing hearing. See In re Carter, 2004 VT 21, ¶ 49, 176 Vt. 322 ("The Sixth Amendment guarantees a criminal defendant the right to counsel during all critical stages of the adversarial proceedings against him." (quotation omitted)); State v. Tobin, 2018 VT 108, ¶¶ 17, 18, 208 Vt. 518 (recognizing that sentencing is critical stage and defendant has constitutional right to be present at imposition of sentence). Defendant's attorney articulated why he did not believe an incarcerative sentence was necessary and, alternatively, why a short period of incarceration was appropriate. The court explained why it considered a lengthier prison term appropriate. While it later recognized that one of the reasons it proffered was erroneous, it reached the same conclusion based on the remaining factors it had identified at the sentencing hearing. The record does not support defendant's assertion that he was "resentenced" or that he had no meaningful opportunity to argue for a lesser sentence.

Our decision in Tobin, 2018 VT 108, does not compel a contrary conclusion. In that case, the court imposed a sentence and shortly thereafter, the State moved under Vermont Rule of Criminal Procedure 35 to correct the sentence as inconsistent with the statutorily required maximum sentence. The trial court recognized its error, held a hearing on the State's motion, and subsequently issued an order that changed the defendant's sentence from fifteen-to-twenty-five years to fifteen years to life. The defendant argued on appeal that the court erred by correcting its erroneous sentence outside his presence. We rejected this argument. We recognized there that "[a] criminal defendant has a right to be present at every critical stage of the defendant's criminal proceeding" and that a "defendant's constitutional right to be present applies to the imposition of sentence." Id. ¶¶ 17, 18 (quotation omitted). The question presented in Tobin was "whether the defendant ha[d] a right to be present when the court issue[d] an order that correct[ed] an illegal sentence." Id. ¶ 19. We declined to hold that a court never need hold a hearing when correcting an illegal sentence, instead holding that "in the context of a Rule 35 motion," we will consider if a "defendant's absence affected the fairness of the sentence correction." Id. ¶ 20.

In reaching our conclusion, we noted that "[a]t an initial sentencing, a defendant's presence is necessary to the fairness of the process" and that a "defendant is entitled to have the opportunity to challenge the accuracy of information at sentencing and argue about its reliability and the weight the information should be given and to present any evidence in mitigation he may have." Id. ¶ 22 (quotations omitted). We recognized that "[a] defendant's presence may likewise be necessary in some resentencing situations." Id. "For example," we explained:

> where the resentencing involves more than a mere correction and a defendant's argument may influence the outcome, the defendant should be allowed an opportunity to appear before the court and defend against the amendment. In contrast, where an illegal sentence may be corrected without any legal analysis or further exercise of judicial discretion, and the defendant has already been afforded an opportunity to appear and defend in the original sentencing hearing, little if any purpose is served by requiring an additional hearing before correcting the sentence.

Id. (quotations omitted). We held in Tobin that because the "defendant was present at the initial sentencing, the trial court reimposed the same minimum sentence, and the trial court had no discretion in correcting the maximum sentence, defendant had no right to be present when the court imposed the corrected sentence. Id. ¶ 24.

We are faced with much different circumstances here as defendant's sentence was not changed. The court corrected its erroneous statement and maintained the same sentence for the reasons it had identified at the sentencing hearing based only on the record developed at that hearing. Defendant was present at the sentencing hearing and represented by counsel. He was given the "opportunity to challenge the accuracy of information at sentencing and argue about its reliability and the weight the information should be given and to present any evidence in mitigation he may have." Id. ¶ 22 (quotations omitted). The court simply did not find defendant's position persuasive.

We note, moreover, that on the day after the sentencing hearing, defendant filed a notice of appeal. He then withdrew his appeal that same day given the court's clarification of its sentencing decision. Defendant took no other steps via motion or otherwise to ask for a hearing to make further argument and be present.

We also distinguish United States v. DeMott, 513 F.3d 55, 58 (2d Cir. 2008) (per curiam), cited by defendant. In that case, a defendant's sentence was vacated by an appeals court and remanded to the trial court for resentencing. Without notice to defendant or a sentencing hearing, the trial court issued a written order imposing a sentence. The parties agreed on appeal that this was error. The court there held that "a defendant has a constitutional right to be present [during resentencing], because technically a new sentence is being imposed in place of the vacated sentence." Id. (quotation and alteration omitted) (stating that "denial of this right is subject to harmless error review," and "error is harmless only where it is unimportant and insignificant in the context of the case, such as where the new sentence is less onerous than the original sentence or where [the] defendant's presence would not have affected the outcome" (quotations and citation omitted)).

The court did not vacate defendant's sentence here. As previously discussed, it corrected a misstatement and determined that this correction did not undermine its conclusion. We reject defendant's assertion that he was denied the right to be present at sentencing and the right to counsel.

Defendant next argues that the court's findings do not support the sentence it imposed. He contends that if the court considered sex-offender treatment important, his proposed sentence would have allowed that treatment to occur. He argues that the court gave too much weight to the victim's age and ignored mitigating factors.

Defendant essentially wars with the weight of the evidence, which is a matter reserved solely for the trial court. State v. Hagen, 151 Vt. 64, 65 (1989) ("It is axiomatic . . . that the trier of fact is given the sole determination of the weight of the evidence, the credibility of witnesses, and the persuasive effect of the testimony."). The court recognized various mitigating factors in reaching its conclusion. It did not need to adopt defendant's preferred term of incarceration

simply because it deemed sex-offender treatment important.  It cited additional factors that were critical to its decision as well, including the nature of the crime and the need for punishment.  The sentence was consistent with the statute and the plea agreement, and it was within the court's wide discretion.  There was no error.  See State v. Turner, 150 Vt. 72, 75 (1988) (explaining that trial court's sentencing decision will stand "[a]bsent a showing that the trial court failed to exercise discretion at all, or exercised it for purposes which are clearly untenable, or to a degree which is unreasonable").

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Karen R. Carroll, Associate Justice


_____
William D. Cohen, Associate Justice